UNITED STATES TO THE USE OF HINE *v.* MORSE AND OTHERS, EXECUTORS OF CLARKE.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 25. Argued November 1, 1910.—Decided November 28, 1910.

Even if the bill seeking a sale of infant's property for reinvestment does not clearly state a case within the authority of the court, the decree of sale, appointment of trustee and execution of his bond are not mere nullities subject to collateral attack.

The Supreme Court of the District of Columbia is one of general ju-

risdiction possessing all powers conferred on Circuit and District Courts of the United States—in fact, the usual powers incident to a court of equity at the date of the Revolution, not incompatible with the changed forms and principles of government or affected by subsequent legislation. *Clark* v. *Mathewson*, 7 App. D. C. 382.

The inherent power of a court of equity of general jurisdiction over the persons and estates of infants is very wide. Its errors in regard to a sale of real estate of infants are reversible by appellate procedure, but until so corrected its judgment is not a nullity.

The voluntary surety on the bond of a trustee in a proceeding to sell real estate is estopped to attack the validity of the decree appointing the trustee or of the bond.

Where the demurrer to one plea of the answer was overruled and plaintiff did not plead further, reversal of the judgment and sustaining the demurrer to that plea leaves the other pleas open to be dealt with by the court below.

This court only having before it the demurrer on one plea to the answer which was overruled below, it reverses the judgment and sustains the demurrer, and other pleas in defense remain at issue and this court will not consider them on this appeal.

31 App. D. C. 433, reversed.

THE facts, which involve the liability of a surety on a bond given for faithful performance of his duty by a trustee appointed to sell the interest of an infant in real estate, are stated in the opinion.

*Mr. Wm. Hepburn Russell*, with whom *Mr. W. H. Robeson* was on the brief, for plaintiffs in error:

The Supreme Court of the District having exercised jurisdiction over the subject-matter of the suit in which the bond was given, its determination of its own jurisdiction is, after this lapse of time, binding upon all persons before the court in that case as to all proceedings, including the trustee and his surety. *Florentine* v. *Barton*, 2 Wall. 210, 216; *Evers* v. *Watson*, 156 U. S. 527, 533; *State of Wisconsin* v. *Waupacca Bank*, 20 Wisconsin, 640.

The test of jurisdiction is whether the court had power to enter upon the inquiry; not whether its conclusion

was right or wrong. *Commissioners of Lake County* v. *Platt,* 79 Fed. Rep. 567; Brown on Jurisdiction, §§ 64, 65, 66.

The decree of sale under which the trustee Waggaman sold the property and acquired the funds for the security of which he gave the bond, cannot be collaterally questioned by his surety. *McCormick* v. *Sullivant,* 10 Wheat. 192; *Skillern's Exrs.* v. *May's Exrs.,* 6 Cranch, 267; *Clary* v. *Hoagland,* 6 California, 685; *Tallman* v. *McCarty,* 11 Wisconsin, 401; *Dugan* v. *City of Baltimore,* 70 Maryland, 1; *Ex parte Watkins,* 3 Pet. 191, 203, 209; *Florentine* v. *Barton,* 2 Wall. 216; *Ex parte Parks,* 93 U. S. 20; *Pulaski Co.* v. *Stuart,* 28 Grattan, 879; *Harvey* v. *Tyler,* 2 Wall. 328, 342; *Galpin* v. *Page,* 18 Wall. 350; *Thompson* v. *Tolmie,* 2 Pet. 156; *Grignon* v. *Astor,* 2 How. 318; *Voorhees* v. *Bank of United States,* 10 Pet. 449, 473, 478; *Griffith* v. *Bogert,* 18 How. 158, 164.

The surety Clarke was estopped from denying the jurisdiction of the equity court to enter the decree appointing the trustee and authorizing him to make sale of the property, whether such decree is valid or invalid. *Stephens* v. *Crawford,* 1 Georgia, 574; *Kincannon* v. *Carroll,* 30 Am. Dec. 391; *Ploughman* v. *Henderson,* 59 Alabama, 559.

The jurisdiction of the court in the appointment of an executor cannot be questioned by the surety on the executor's bond. *Moore* v. *Earle,* 91 California, 632; *Parker* v. *Campbell,* 21 Texas, 763; *Cutler* v. *Dickinson,* 8 Pick. 386; *Williamson & McArthur* v. *Woolfe,* 37 Alabama, 298; *Norris* v. *State,* 22 Arkansas, 524; *Burnett* v. *Henderson,* 21 Texas, 588; *Coons* v. *People,* 76 Illinois, 383; *Bell* v. *People,* 94 Illinois, 230; *Allen* v. *Magruder,* 3 Cr. C. C. 6; *Mix* v. *People,* 86 Illinois, 329; *Twin City Power Co.* v. *Barrett,* 126 Fed. Rep. 302, 309; *Taylor* v. *State,* 51 Mississippi, 79; *Green* v. *Wardwell,* 17 Illinois, 278; *Hoboken* v. *Harrison,* 30 N. J. Law, 73.

The bond is a valid common-law obligation and as such

binding upon the surety. *Dudley* v. *Rice,* 95 N. W. Rep.
936. A bond, although not good as a statutory bond be-
cause of a want of jurisdiction in the court in the matter,
may be good as a common-law obligation. *Dudley* v. *Rice,*
119 Wisconsin, 97; *S. C.,* 95 N. W. Rep. 936; *United States*
v. *Tingey,* 5 Pet. 115; *Twin City Power Co.* v. *Barrett,* 126
Fed. Rep. 302; *McVey* v. *Peddie* (Neb.), 96 N. W. Rep.
166; *Griffith* v. *Godey,* 113 U. S. 89; *Dair* v. *Roudebush,*
16 N. E. Rep. 636; *Maleverer* v. *Redshaw,* 1 Mod. 35;
*United States* v. *Bradley,* 10 Pet. 343, 360–365; *Justice* v.
*Smith,* 2 J. J. Marsh. 418.

Voluntary bonds or those required as a condition of
holding office, are valid, though not required or author-
ized by statute. *United States* v. *Tingey,* 5 Pet. 115; *United
States* v. *Phumpries,* 11 App. D. C. 44; *United States* v.
*Linn,* 15 Pet. 290; *United States* v. *Bradley,* 10 Pet. 343;
*Tyler* v. *Hand,* 7 How. 573; *Howgate* v. *United States,* 3
App. D. C. 277.

Waggaman was trustee *de facto;* the court had general
jurisdiction in equity to appoint a trustee to receive and
hold funds for the court, and his sureties are, therefore,
liable upon his bond as trustee. *Town of Homer* v. *Mer-
ritt,* 27 La. Ann. 568; *Commissioners* v. *Brisbin,* 17 Minne-
sota, 451; *Case* v. *State,* 69 Indiana, 46; *Police Jury* v.
*Haw,* 2 Louisiana, 41.

*Mr. John Selden* for defendants in error:

The grounds of relief set forth in the bill disclosed the
necessity for a receiver, but no justification, whatever,
for a sale of the property. *Stansbury* v. *Inglehart,* 20
D. C. Rep. 134; *Pike* v. *Wassell,* 94 U. S. 711, 715. The
court possessed no jurisdiction of the case made by the
bill and could render no valid decree under or in aid of
the bill. *Rose* v. *Himely,* 4 Cranch, 269; *Hickey* v. *Stew-
art,* 3 How. 762; *Reynolds* v. *Stockton,* 140 U. S. 264–265;
*Windsor* v. *McVeigh,* 93 U. S. 232; *Williams* v. *Berry,* 8

How. 542; *Bigelow* v. *Forrest*, 9 Wall. 351; *In re Frederick*, 149 U. S. 76; *In re Bonner*, 151 U. S. 256; *Ex parte Reed*, 100 U. S. 23; *In re Mills*, 135 U. S. 270; *Ex parte Lange*, 18 Wall. 176; *Lamaster* v. *Keeler*, 123 U. S. 376, 391; *Ex parte Rowland*, 104 U. S. 612; *Ex parte Fisk*, 113 U. S. 718; *Ex parte Terry*, 128 U. S. 305; *Elliott* v. *United States*, 23 App. D. C. 456, 466; *Elliott* v. *Piersol*, 1 Pet. 340; *Wilcox* v. *Jackson*, 13 Pet. 511; *Thompson* v. *Whitman*, 18 Wall. 467; *Kilbourn* v. *Thompson*, 103 U. S. 197; *Brown* v. *Fletcher's Estate*, 210 U. S. 82.

In the District of Columbia, the jurisdiction of equity to decree a sale of the estate of an infant in landed property is purely statutory. *Thaw* v. *Ritchie*, 5 Mack. 200, 201; *S. C.*, 136 U. S. 519; *Stansbury* v. *Inglehart*, 20 D. C. Rep. 134; *Trust Co.* v. *Muse*, 4 App. D. C. 12, 22; *Clark* v. *Mathewson*, 7 App. D. C. 382–384; *District of Columbia* v. *McBlair*, 124 U. S. 320.

The proceedings taken against non-residents under the bill were void.

The strictness of procedure required for affecting titles to real property under merely statutory methods rendered it wholly unlawful to impair the rights of the absent defendants through such publications, and reduced to a nullity any decree rendered against those defendants. *Guaranty Trust Co.* v. *Green Cove Railroad*, 139 U. S. 137, 146–148; *Thatcher* v. *Powell*, 6 Wheat. 119; *Hunt et als.* v. *Wickliffe*, 2 Pet. 201; *Boswell's Lessee* v. *Otis et al.*, 9 How. 348; *Early* v. *Dow*, 16 How. 610; *Galpin* v. *Page*, 18 Wall. 350; 7 Robinson's Practice, 16–21, 86–99; *Settlemier* v. *Sullivan*, 97 U. S. 444, 448–449; *Cheely* v. *Clayton*, 110 U. S. 701, 708. See also *Ensminger* v. *Powers*, 108 U. S. 292, 301; *Brown* v. *Fletcher's Estate*, 210 U. S. 82, 88; *Harris* v. *Hardeman*, 14 How. 334; *Hagar* v. *Reclamation District*, 111 U. S. 701, 709; *Turpin* v. *Lemon*, 187 U. S. 51, 58.

The extraordinary course of the proceedings in the suit

in equity show that even if conducted under the forms of law, they were not judicial and that complainant procured whatever decrees and orders that were desired; such proceedings are *res judicata* of nothing. *Graffan* v. *Burgess*, 117 U. S. 186; *Ensminger* v. *Powers*, 108 U. S. 301; *Jenkins* v. *Robertson*, 1 Law Rep. Ho. L. (Scotch App.) 122.

The bill, and, with few exceptions, all of the steps taken under it, can be viewed no otherwise than as a succession; in effect, of impositions upon judicial authority.

And it is not in this tribunal that such impositions, whatever the forms they may have assumed, have ever been permitted to prevail. *Lord* v. *Veazie*, 8 How. 251, 255; *Cleveland* v. *Chamberlain*, 1 Black, 419, 425–426; *Wood Paper Co.* v. *Heft*, 8 Wall. 333, 336; *Johnson* v. *Waters*, 111 U. S. 640, 659; *Dakota County* v. *Gledden*, 113 U. S. 222, 225–226; *Tennessee &c. R. R. Co.* v. *Southern Tel. Co.*, 125 U. S. 695; *Gardner* v. *Goodyear Dental Vulcanite Co.*, 131 U. S. ciii; *Meyer* v. *Pritchard*, 131 U. S. ccix; *Little* v. *Powers*, 134 U. S. 547, 557; *South Spring Gold Co.* v. *Amador Gold Co.*, 145 U. S. 300; *Hadfield* v. *King*, 184 U. S. 162.

There was no existence of continued liability to the beneficiary on the part of the surety, as there was an executed arrangement to the prejudice of the surety, between beneficiary and the principal, under which the condition of the bond had become impossible of performance.

The surety assumes no moral obligation beyond such as flows from his contract. *United States* v. *Price*, 9 How. 83, 92; *Pickersgill* v. *Lakens*, 15 Wall. 140, 144.

And he possesses an interest in the terms, and even in the letter, of his contract. *Miller* v. *Stewart*, 9 Wheat. 680, 703; *McMichen* v. *Webb et al.*, 6 How. 292, 298; *Martin et al.* v. *Thomas et al.*, 24 How. 315, 317; *Smith* v. *United States*, 2 Wall. 219, 235; *United States* v. *Boecker*, 21 Wall. 652, 657; *United States* v. *Ulrici*, 111 U. S. 38, 42.

The common-law obligation which, even in their own

right, the United States may enforce, must be a valid obligation. *United States* v. *Linn,* 15 Pet. 311; *Tyler* v. *Hand,* 7 How. 583; *United States* v. *Hudson,* 10 Wall. 408; *Jesup* v. *United States,* 106 U. S. 152; *Moses* v. *United States,* 166 U. S. 371, 386; *United States* v. *Dieckerhoff,* 202 U. S. 302, 309.

There is no estoppel. A mere recital in a bond cannot be made to operate by way of estoppel, so as to preclude the obligor from showing the instrument to be void. *Cadwell* v. *Colgate,* 7 Barb. 253, 256–257; *Thomas* v. *Burnus,* 23 Mississippi, 550; *Crum* v. *Wilson,* 61 Mississippi, 233; *Levy* v. *Wise,* 15 La. Ann. 38; *Hudson* v. *Inhab. of Winslow,* 35 N. J. Law (6 Vroom), 537; Bigelow, Estop. 369*n;* *The Fidelity,* 16 Blatch. 569; *The Monte A.,* 12 Fed. Rep. 331; *The Berkely,* 50 Fed. Rep. 920.

Bonds executed for the relief of void attachments, as they stand in place of the attachments, are themselves void, and cannot create estoppels. *Pacif. Nat. Bk.* v. *Mixter,* 124 U. S. 721; *Plant. Loan & Sav. Bk.* v. *Berry,* 91 Georgia, 264; *First Nat. Bk. &c.* v. *La Due,* 39 Minnesota, 416; *Cadwell* v. *Colgate,* 7 Barb. 253, 256–257; *Horman* v. *Brinkerhoof,* 1 Denio, 185; *Brokman* v. *Hamill,* 43 N. Y. 554; *Poole* v. *Kermit,* 59 N. Y. 554; *Buckingham* v. *Bailey,* 4 Sm. & Marsh. 538.

If, in a void proceeding, one give bond for the accomplishment of an unlawful object, the obligee who has participated in that object, can maintain no action upon the instrument. 2 Smith's Ld. Cas. (9th Am. ed.) 668; *Craig* v. *Missouri,* 4 Pet. 410; *Randall* v. *Howard,* 2 Black, 585, 588–589; *Wheeler* v. *Sage,* 1 Wall. 518, 530–531; *Higgins* v. *McCrea,* 116 U. S. 671, 684–685; *Daniels* v. *Tearney,* 102 U. S. 415.

Mr. Justice Lurton delivered the opinion of the court.

This was an action upon a bond executed by Thomas E.

Waggaman, as principal, and Daniel B. Clarke, as his surety. The bond was in these words and figures:

"In the Supreme Court of the District of Columbia.

In Equity.   No. 20225, Docket 46.

Mattie Mc.C. Hine ⎫
        *vs.*            ⎬
Robert Edward Hine et al. ⎭

"Know all men by these presents, that we, Thomas E. Waggaman, principal, and Daniel B. Clarke, surety, all of the District of Columbia, acknowledge ourselves indebted to the United States of America in the penal sum of eighteen thousand dollars, for the payment of which we bind ourselves and every of our heirs, executors and administrators, jointly and severally, for and in the whole. Sealed with our seals, and dated this 7th day of July A. D. 1899.

"Whereas the said Thomas E. Waggaman has been duly appointed trustee to make sale of the real estate in the proceedings in this cause mentioned.

"Now the condition of the above obligation is such, that if the above bounden Thomas E. Waggaman shall well and truly discharge the duties devolving upon him as such trustee and shall in all things obey such order and decree as this court shall make in the premises, then the above obligation to be void and of no effect; else to be in full force and virtue."

The bond, as shown by its recitals, was executed in a pending equity cause in the Supreme Court of the District, wherein the parties for whose use this suit is brought were parties, either plaintiff or defendant.

The declaration, in substance, averred a breach of the bond, in this: That Waggaman had assumed the duty and function of trustee for the sale directed by the decree, had sold and conveyed the property as directed, but had not accounted for the proceeds, having unfaithfully vio-

lated the trust and confidence reposed in him by squandering and misappropriating such proceeds. It was further averred that on November 21, 1905, the said Waggaman had disobeyed a decree of the court, requiring him to pay into court the sum of $8,147.27, with interest from August 1, 1904, and was therefore in default.

The defenses with which we are concerned upon this writ are those made by the surety, who, by a plea which the court below sustained, challenged the obligation of the bond. The insistence is that the Supreme Court of the District exceeded its authority in decreeing a sale of the land which was sold by Waggaman, and his appointment to make such a sale was a nullity, and the bond executed by him with the defendant Clarke as surety mere waste paper.

The proceeding in the Supreme Court in which this bond was executed was a bill in equity to sell lot No. 1912 I street N. W., Washington, D. C., as the property of a minor for purpose of reinvestment under like trusts. The title was held under the will of Robert B. Hine, who died in 1895. So much of the will as concerns the title to the premises of which a sale was decreed was in these words:

"I give and bequeath to my dear wife, Mattie McC. Hine, a life interest in all my real estate. As executrix she will collect the income arising from said real estate, and after paying all necessary expenses of collection, fire insurance and repairs, shall retain the remainder of the income for her own use. After the death of my said wife, I give and bequeath my real estate to my son, Robert Edward, and any other children that may hereafter be born to me. If my said wife should marry again, she will from the date of such remarriage, be entitled to retain for her own use, one-half of the net income of my estate, and will pay the remainder to a trustee for my son, and any other children who may hereafter be borne to me. Provided, further, that should my wife marry

again, and should no child of mine by her, be then surviving, the whole net income from my estate shall be retained by her, during her life, and after her death, my real estate shall be sold, and of the proceeds, one-third shall be paid to my father, the Rev. Henry Hine now of Boston Spa. Yorkshire England, if he then be living, he not being then living to my mother Amelia Burnett Hine, neither of them being then living to my sister, Amelia Burnett Hine, and the residue, shall be equally divided between my brothers and sisters share and share alike. If neither parent, nor my sister Amelia Burnett Hine outlives my said wife, then the whole net proceeds of the sale of my real estate, shall be equally divided, between my brothers and sisters. Should any of these have died, before this distribution takes place, their surviving children shall receive the share of the deceased parent, share and share alike."

The complainant in the suit was Mattie McC. Hine, the widow of the testator, who averred that she had never remarried. The defendants were the only issue of her marriage with testator, her son Robert E. Hine, then an infant of nine years of age, and the persons who, under the will, were given contingent interests. The minor Robert E. Hine was duly served and answered by guardian *ad litem.* The other defendants were made parties by publication, as persons not to be found in the District. The bill alleged that the dwelling-house was deteriorating in value, that it was often unrented, that repairs, insurance and taxes left an inconsiderable net income, which would go on diminishing. That she believed she could obtain $8,500 for the premises, a sum much larger than the value of the property to the remaindermen when her estate should fall in, and that the proceeds could be so invested as to much improve her income and better "enable her to provide for the remainderman during his minority." The bill alleged that the will did not

prohibit a sale. The prayer was for a decree of sale and for a reinvestment, in pursuance of § 973, Rev. Stat. D. C.

Upon the pleadings and proof the court directed a sale of the said lot, and in the same decree appointed Thomas E. Waggaman "trustee to make the sale," requiring him to execute a bond with surety "conditioned for the faithful performance of the trust reposed in him by this decree, or which may be reposed in him by any future order or decree in the premises." By the same decree he was required "to bring into court the money arising on such sale . . . to be disposed of under the direction of the court," etc.

The contention is that the Supreme Court of the District has no inherent or general power as a court of equity to decree the sale of an infant's property for the purpose of reinvestment, and that its jurisdiction was wholly dependent upon statutory power conferred by §§ 969 *et seq.*, Rev. Stat. D. C., taken from the act of Congress of August 18, 1856. Section 969 reads as follows:

"Where real estate is limited by deed or will to one or more for life or lives, with a contingent limitation over to such issue of one or more of the tenants for life as shall be living at the death of their parent or parents, and the deed or will does not prohibit a sale, the Supreme Court of the District may, upon the application of the tenants for life, and if the court shall be of the opinion that it is expedient to do so, order a sale of such estate, and decree to the purchaser an absolute and complete title in fee simple."

The contention is that the only jurisdiction conferred by this statute is confined to real estate which is by deed or will "limited to one or more lives, with a contingent limitation over to such issue of one or more of the tenants for life as shall be living at the death of either parent," and that under the will of Robert B. Hine the devise to Robert Edward Hine is a vested and not a contingent

remainder, while the contingent remainders—contingent on the death of said Robert and the subsequent remarriage of his mother, the said Mattie—are not limitations over to issue of either Robert B. Hine or Mattie Hine. For this construction of the statute the court below relied upon *Trust Co.* v. *Muse*, 4 App. D. C. 12, 20; *Thaw* v. *Ritchie*, 5 Mack. 200, and *Clark* v. *Mathewson*, 7 App. D. C. 384.

Clearly under the will there was a life tenant and a remainder over at the death of the life tenant to Robert E. Hine, who was the issue of the testator and of the life tenant. The remainder was not absolute, for if the remainderman should die, and his mother, the life tenant, remarry, this lot was to be sold and the proceeds paid over to certain collaterals named. Technically the interest was a vested remainder, subject to open and let in the testator's brothers and sisters and to be divested upon the death of Robert E. Hine and remarriage of the life tenant. The contention now is that if the court erred in the construction of the will, or in the interpretation and application of the statute, and decreed a sale for reinvestment, not strictly authorized by the statute, that its action and decree is to be regarded as a nullity, that the sale is void, and that the appointment of Waggaman as trustee and the execution of his bond are absolute nullities.

But if we assume that upon a critical construction of the will and of the statute the bill seeking a sale of this property for reinvestment did not state a case clearly within the statutory authority of the court, it does not necessarily follow that the decree of sale and all else that occurred are to be treated as mere nullities, subject to collateral attacks such as this is.

The Supreme Court of the District is one of general jurisdiction. It possesses all of the powers which by statute are conferred upon the Circuit and District Courts of the United States. Sections 760 and 765, Rev. Stat.

D. C.   It may be said, indeed, to have the usual powers incident to a court of equity at the date of the Revolution, ·not incompatible with the changed form and principles of government or affected by subsequent legislation. *Clark* v. *Mathewson,* 7 App. D. C. 382.

The inherent power of a court of equity over the persons and estates of infants is very wide.   For the purpose of maintenance, the power over real estate is undoubtedly more comprehensive than it is over the sale of real estate for purposes of reinvestment, though manifestly for the interest of the minor.   The weight of authority seems to be that it does not extend to sales merely because it shall appear to be for the interest of the infant (Bispham's Equity, § 549; Story's Equity, § 1357; 3 Pomeroy Equity, §§ 1304, 1309), though there is not lacking very respectable authority for the power to sell real estate when shown to be for the manifest interest of the minor.   2 Kent's Comm., 11th ed., * 230; 5 Johns. Ch. 167; 4 Heisk. (Tenn.) 370, and 7 Baxt. (Tenn.) 502.·   The Supreme Court of the District had jurisdiction over the subject-matter, the *res.*   It had jurisdiction over the parties.   It was, according to due course of equity proceeding, called upon to examine the will and the statute which gave the power to make the sale in certain circumstances.   If then jurisdiction consists in the power to hear and determine, as has so many times been said, and the court errs in holding that a case has been made either under its inherent power or its statutory authority, can it be said that it has usurped jurisdiction and that its decrees are absolute nullities?   To this we cannot consent.   If the court was one of general and not special jurisdiction, if under its inherent power, supplemented by statutory enlargement, it had jurisdiction under any circumstances to sell the real estate of minors for reinvestment, it had jurisdiction to examine and determine whether the particular application was within or beyond its authority.   To do this

was jurisdiction. If it errs, its judgment is reversible by proper appellate procedure. But its judgment, until it be corrected, is a judgment, and cannot be regarded as a nullity.

In the leading case of *Ex parte Tobias Watkins*, 3 Pet. 193, 203, 206, the opinion was by Chief Justice Marshall. The question arose upon a writ of *habeas corpus*. The petitioner had been indicted and convicted. He sought to be discharged from prison because the indictment upon its face charged no offense cognizable by courts of the United States. The court said, among other things: .

"An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous. The Circuit Court for the District of Columbia is a court of record, having general jurisdiction over criminal cases. An offense cognizable in any court, is cognizable in that court. If the offense be punishable by law, that court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offense charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner. The judgment is equally binding in the one case and in the other; and must remain in full force unless reversed regularly by a superior court capable of reversing it."

After referring to and commenting upon *Kempe's Lessee* v. *Kennedy*, 5 Cranch, 173, and *Skillern's Executor* v. *May's Executor*, 6 Cranch, 267, the court added:

"Had any offense against the laws of the United States been in fact committed, the Circuit Court for the District of Columbia could take cognizance of it. The question

whether any offense was or was not committed, that is, whether the indictment did or did not show that an offense had been committed, was a question which that court was competent to decide. If its judgment was erroneous, a point which this court does not determine, still it is a judgment, and, until reversed, cannot be disregarded."

This case was followed in *Ex parte Parks*, 93 U. S. 18, 23, and in *In re Coy*, 127 U. S. 731, 757, where this court, speaking by Mr. Justice Miller, said of the language just cited from *Ex parte Watkins*, that—

"It may be said that this language is too broad in asserting that, because every court must pass upon its own jurisdiction, such decision is itself the exercise of a jurisdiction which belongs to it, and cannot, therefore, be questioned in any other court. But we do not so understand the meaning of the court. It certainly was not intended to say that because a Federal court tries a prisoner for an ordinary common law offense, as burglary, assault and battery, or larceny, with no averment or proof of any offense against the United States, or any connection with a statute of the United States, and punishes him by imprisonment, he cannot be released by *habeas corpus* because the court which tried him had assumed jurisdiction.

"In all such cases, when the question of jurisdiction is raised, the point to be decided is, whether the court has jurisdiction of that class of offenses. If the statute has invested the court which tried the prisoner with jurisdiction to punish a well-defined class of offenses, as forgery of its bonds or perjury in its courts, its judgment as to what acts were necessary under these statutes to constitute the crime is not reviewable on a writ of *habeas corpus*."

The principle has been applied in many cases, notably in cases in which want of jurisdiction as a court of the

United States was apparent on the record. *Des Moines Co.* v. *Iowa Homestead Co.*, 123 U. S. 552, 557, 559; *Dowell* v. *Applegate*, 152 U. S. 327, 337.

In *McNitt* v. *Turner*, 16 Wall. 352, 365, the court, after passing upon various jurisdictional objections to a judicial sale of a title in controversy, said:

."But there is a comprehensive and more conclusive answer to all the objections to the sale which have been considered, and to others suggested which have not been adverted to.

"Upon the filing of the notice with the proof of publication, and the subsequent filing of the petition of the administrator for authority to sell, the Circuit Court had jurisdiction of the case. No presumption on that subject is necessary. Jurisdiction is authority to hear and determine. It is an axiomatic proposition that when jurisdiction has attached, whatever errors may subsequently occur in its exercise, the proceeding being *coram judice*, can be impeached collaterally only for fraud. In all other respects it is as conclusive as if it were irreversible in a proceeding for error. The order of sale before us is within this rule. *Grignon's Lessee* v. *Astor et al.*, 2 How. 341, was, like this, a case of a sale by an administrator. In that case, this court said: 'The purchaser under it is not bound to look beyond the decree. If there is error in it of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error; and so where an appeal is given, but not taken, in the time allowed by law.' This case and the case of *Voorhees* v. *The Bank of the United States*, 10 Pet. 449, are the leading authorities in this court upon the subject. Other and later cases have fol-

lowed and been controlled by them. *Stow* v. *Kimball* affirms the same doctrine."

The line between a judgment which is a plain usurpation of jurisdiction and one which is merely erroneous and reviewable only by seasonable appeal, is a plain one. The case in hand falls, in our judgment, within those which are merely reversible upon appellate proceedings, and the judgment decreeing the sale and appointing Waggaman as trustee to make the sale was not a nullity.

In *Voorhees* v. *Bank*, 10 Pet. 449, 474, this court said:

"The line which separates error in judgment from the usurpation of power is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity; in the other, mere waste paper. There can be no middle character assigned to judicial proceedings which are irreversible for error. Such is their effect between the parties to the suit; and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution. It would be a well-merited reproach to our jurisprudence if an innocent purchaser, no party to the suit, who had paid his money on the faith of an order of a court, should not have the same protection under an erroneous proceeding as the party who derived the benefit accruing from it."

In *Fauntleroy* v. *Lum*, 210 U. S. 230, 237, it is laid down that a judgment cannot be collaterally impeached by showing that it was based upon a mistake of law.

But aside from the view we have expressed as to the validity of the proceedings when collaterally attacked, we are of opinion that the question of the validity of the decree of sale, the order appointing Waggaman trustee to make the sale, and the validity of the bond in suit is

not open to question by one who voluntarily became the surety upon the bond, thereby enabling his principal to obtain the proceeds of sale. Having obtained the trust and confidence of the court by aid of the security afforded by the solemn obligation to faithfully execute the order of the court and to pay into the court the proceeds of the sale which he undertook to make, neither the trustee so appointed, nor the surety for his performance of the trust, are in a situation to deny the regularity of the transaction. The proceeds which Waggaman received are either the funds of the beneficial owners of the property, or, if the sale be in fact void so far as to confer no title, the purchaser in equity and justice must be protected before the money is distributed. The benefit which Waggaman expected to secure, he has been enabled to enjoy through the voluntary execution of this bond by Clarke 'as his surety. That bond recites his due appointment, and it would be inequitable and unjust to permit either the principal or his surety to deny the fact.

This rule of estoppel has been applied in many cases. It was applied in respect to the bond of an Indian agent. The surety upon the bond denied liability because the Government did not produce the commission showing the appointment of his principal. The court said: "The bond upon which the suit was brought recites that he was appointed Indian agent and the obligors in the bond are therefore estopped from denying it." *Bruce* v. *United States*, 17 How. 437, 442.

The principle was applied to a distiller's bond where one of the defenses was that the bond was invalid. The court said:

"But we prefer to place our judgment upon the broader ground marked out by the adjudications of this court, to which we have referred. Every one is presumed to know the law. Ignorance standing alone can never be the basis of a legal right. If a bond is liable to the objec-

tion taken in this case and the parties are dissatisfied, the objection should be made when the bond is presented for execution. If executed under constraint, the constraint will destroy it. But where it is voluntarily entered into and the principal enjoys the benefits which it is intended to secure and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such a defense. In such cases there is neither injustice nor hardship in holding that the contract as made is the measure of the rights of the government and of the liability of the obligors." *United States* v. *Hodson,* 10 Wall. 395, 409.

It was applied in respect of a stay bond executed under a void act of legislation. "Not to apply the principle of estoppel to the bond in this case would," said the court, "it seems to us, involve a mockery in judicial administration and a violation of the plainest principles of reason and justice." *Daniels* v. *Tearney,* 102 U. S. 415, 422.

The opinions of the highest courts of the States are full of applications of the rule of estoppel. In *Plowman* v. *Henderson,* 59 Alabama, 559, the sureties upon the bond of an administrator were not permitted to show the illegality of his appointment. To the same effect is *White* v. *Weatherbee,* 126 Massachusetts, 450.

The sureties upon the bond of a sheriff were held estopped to deny validity of his appointment or the regularity of his bond. *Jones* v. *Gallatin County,* 78 Kentucky, 491.

In *People* v. *Norton,* 9 N. Y. 176, the sureties upon the bond of a trustee appointed by a chancery court were held estopped to deny the validity of the order appointing him.

In *State* v. *Anderson,* 16 Lea (Tenn.), 321, 335, and *United States* v. *Maurice,* 2 Brock, 96, the rule is recognized and applied.

The questions which we have considered arose upon

a plea which set out the proceedings in the case in which the bond had been taken, and averred their nullity for want of jurisdiction. Another and distinct defense relied upon in the plea was that after the proceeds of sale had come into the possession of said Waggaman that Mattie McC. Hine, one of the beneficiaries for whose use this suit is prosecuted by the United States, had agreed with the said Waggaman that he should retain in his possession and for his own purposes the fund aforesaid, and should pay to her interest at the rate of five per cent per annum, quarterly. That this agreement was acted upon and the interest so paid from the date of the receipt of the proceeds in 1899 to May 1, 1904, and that the agreement was without the knowledge or consent of the surety. There was a demurrer and joinder thereon to so much of the said plea as set out and relied upon the nullity of the proceedings under which the bond had been executed, and a replication and issue upon the plea relying upon any alleged agreement between Waggaman, the principal, and Mrs. Hine, as one of the beneficiaries in the bond. The demurrer was overruled and complainants electing to stand upon it, declined to further plead; whereupon the action was dismissed. From this judgment there was an appeal to the Court of Appeals of the District, where the judgment was affirmed.

So much of the plea as sought to defend the action in whole or in part in consequence of the alleged agreement between the principal in the bond and Mrs. Hine without the consent of the surety remains at issue undisposed of, and is accordingly not considered by us.

The judgment of the Court of Appeals so far as it determined the validity of the plea aforesaid was erroneous, and the case is reversed and remanded with direction to sustain the demurrer and remand the case for further proceedings not inconsistent with this opinion.

*Reversed.*