AMARILLO NAT. BANK v. SANBORN et al.
(No. 637.)

(Court of Civil Appeals of Texas. Amarillo. June 27, 1914. On Motion for Rehearing, Oct. 10, 1914.)

1. GARNISHMENT (§ 241*)—REPLEVIN BOND—LIABILITY OF SURETY.

A surety upon a garnishment bond which recited that, in order to release from the garnishment writs any and all debts and claims in the possession of the garnishees, and belonging to the defendant, the defendant and the sureties bound themselves to pay, etc., is estopped from asserting that moneys paid to one of the garnishees as attorney for the defendant were subject to a lien in his favor; the bond admitting that the property, if any, was that of defendant.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 457; Dec. Dig. § 241.*]

On Motion for Rehearing.

2. ESTOPPEL (§ 119*)—EQUITABLE ESTOPPEL—QUESTION FOR COURT.

The question of the existence of an estoppel which precludes the person bound from contradicting a recital or admission is one of law for the court.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 309; Dec. Dig. § 119.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Suit by the Amarillo National Bank against William Harrell and others. From a judgment for defendants, plaintiff appeals. Affirmed in part, and in part reversed and rendered.

A. A. Lumpkin, of Amarillo, for appellant. Madden, Trulove & Kimbrough, Jno. W. Veale, W. Boyce, and Gustavus & Jackson, all of Amarillo, for appellees.

HALL, J. Appellant bank filed this suit on the 20th day of August, 1912, and applied for a writ of garnishment, claiming an indebtedness against William Harrell, in the sum of $4,058.30, evidenced by a note dated February 1, 1909, bearing interest from date at the rate of 10 per cent. per annum, and providing for 10 per cent. attorney's fees. It is alleged that said note had a credit of $2,000, paid March 9, 1909, and bore indorsement showing interest paid to May 26, 1909; and the action was further based upon one note executed by appellee William Harrell, in the sum of $300, dated March 22, 1909, due July 22, 1909, with interest after maturity at 10 per cent., and providing for 10 per cent. attorney's fees. Writs of garnishment were issued August 20, 1912, and served upon appellees Ellen M. Sanborn, H. G. Hendricks, and W. Boyce on August 21st and August 24th, respectively. On December 9, 1912, the defendant William Harrell, as principal, with H. G. Hendricks, Al Popham, and W. Boyce, as sureties, executed and delivered

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

his replevin bond to the clerk of the district court, replevying the moneys and properties impounded by said writs of garnishment, executing said bond in the sum of $7,300.

It appears that prior to July 12, 1910, appellee Harrell was the owner of a certain note in the sum of $10,000, signed by O. H. Nelson. Prior to said date Harrell employed H. G. Hendricks and W. Boyce, as attorneys, to prosecute the claim to judgment, and agreed that, as compensation for their services, they should have a one-fourth interest in the claim. On the above date judgment was obtained on this debt. Thereafter executions were issued on this judgment and levied upon the interest of O. H. Nelson in certain lands in Hartley and Oldham counties. The lands so levied upon were bought in at execution sale by appellee Harrell. After the sales and crediting the amount of Harrell's bid thereon, a balance remained unpaid on said judgment. Prior to March 2, 1912, Harrell had become indebted to Popham on two personal notes, one for $295.50 and the other for $136.50, and Popham was surety for Harrell on one note for $780 and one for $1,000, payable to the First National Bank of Amarillo, Tex., and on two notes for $1,385.65, payable to the Drumm Commission Company of Kansas City, Mo.

October 22, 1913, the garnishees H. G. Hendricks and W. Boyce filed their answer to the writs of garnishment, alleging that they were not indebted to the defendant Harrell unless the facts set forth in said answer would constitute such indebtedness. They alleged, in substance, that on the 10th day of December, 1912, in accordance with the terms of a certain contract made and entered into by and between William Harrell, H. G. Hendricks, and W. Boyce, as parties of the first part, and Ellen M. Sanborn, as party of the second part, dated the 17th day of July, 1912, and duly signed and executed prior to the service of the writ of garnishment herein, the said Ellen M. Sanborn paid to William Boyce the sum of $4,003.33, that being the balance due on said contract, there having been paid thereon the sum of $1,000 at the time of its execution prior to the service of the writ of garnishment; that at such time, as a condition of such payment, the said Boyce delivered to the said Ellen M. Sanborn the deed and assignment of judgment mentioned in said contract, as well as a release of a deed of trust on a three-fourths interest in the land described in said deed, executed by Al Popham and F. W. Popham, and deposited for delivery upon the payment of the amount due on said contract. It is further alleged that the said Boyce and Hendricks owned an interest in said fund paid by the said Ellen M. Sanborn, amounting to $1,089.06, and facts are stated which, if true, entitle them to receive such sum for their services as attorneys in representing appellee Harrell in the suit against Nelson.

It is further alleged that Harrell and Al Popham represented to them that the interest of William Harrell in said fund had been assigned to Popham and after the writs of garnishment were served Mrs. Sanborn refused to pay the money under said contract, and that the garnishees Hendricks, Boyce, and Popham became sureties for Harrell in the execution of the replevin bond mentioned above; that upon the filing of said bond Hendricks and Boyce had obtained possession of the fund, and had retained $1,089.06 and delivered $2,914.27, the remainder thereof, to Al Popham, as authorized by an order in writing, signed by William Harrell, directing the said Boyce to make such payment. Attached to this answer, and forming a part of it, was the contract made and executed by Mrs. Sanborn, William Harrell, H. G. Hendricks, and W. Boyce, mentioned above. It provides for the sale and conveyance to Mrs. Sanborn by the other parties thereto of the Nelson judgment, described as having been rendered in the district court of Potter county, in the sum of $10,375, and interest, and credited with $4,000, paid for certain lands in Oldham and Hartley counties. The provisions of this contract material to the determination of this controversy are as follows:

"First. The said William Harrell has sold and conveyed and, at the time of executing this contract, makes and executes his special warranty deed of conveyance to the said Mrs. Ellen M. Sanborn of all his right, title, and interest in and to the lands aforesaid, in Hartley and Oldham counties, Tex., conveyed by Edward F. Swift to O. H. Nelson, and also has sold and this day makes and executes an assignment and transfer to the said Mrs. Ellen M. Sanborn of the judgment aforesaid and the balance due and owing thereon against the said O. H. Nelson for the consideration of $5,000.00 paid and to be paid, as herein specified."

"Third. The consideration hereinbefore mentioned is to be paid as follows: $1,000.00 in cash, the receipt of which is hereby acknowledged, and remaining $4,000.00 to be paid, at least one-half thereof, within thirty. days from the date hereof, and the remaining $2,000.00 on or before November 1, 1912; but in the event any part of said $4,000.00 is not paid within thirty days from the date hereof, such unpaid sum shall bear interest therefrom at the rate of 10 per cent. per annum, such payment to be made at Amarillo, Tex.

"Fourth. The deed of conveyance and transfer of the judgment aforesaid are placed in the possession and are retained by the said William Boyce, until the consideration herein provided for is fully paid. Whereupon he shall make delivery of said deed and transfer to the said Ellen M. Sanborn, or her duly authorized agent, and the said William Boyce has authority to receive and receipt for the payments herein to be made by the said Mrs. Ellen M. Sanborn.

"Fifth. The said Mrs. Ellen M. Sanborn agrees to make the payments herein provided for, but she does not assume the payment of any costs that might be adjudged against the said William Harrell in said suit."

It appears, after. Harrell had obtained the sheriff's deeds to the Nelson lands, he, on March 2, 1912, executed to Francis Popham, as trustee, deeds of trust upon a three-fourths interest in said lands, to secure his indebted-

ness to Al Popham, as well as to secure the said Popham against loss as his surety. The pleadings of Popham show that, in order to consummate the sale of the judgment, as provided for in the above-quoted contract, it became necessary for Harrell to procure a release of the deeds of trust from Al Popham; that Popham agreed to, and did, execute the release with the understanding that it should be delivered to Boyce, to be held by him and delivered with Harrell's deed to Mrs. Sanborn, upon payment by her of the money due under the contract; that the interest of Harrell in the funds coming from Mrs. Sanborn should be paid to Al Popham by Boyce, in place and in lieu of the deeds of trust and lien held by Al Popham. Popham alleges that long prior to the service of the writs of garnishment Harrell assigned to him his interest in the fund to be derived from Mrs. Sanborn, and that such assignment was made for the purpose of securing Harrell's indebtedness to Popham and Popham as surety on the notes to the First National Bank of Amarillo and the Drumm Commission Company, and that by reason thereof he was the owner of the fund paid to him by Boyce, and that Harrell never owned any interest therein subject to garnishment.

By her answer Mrs. Sanborn did not admit that she owed Harrell the money, but alleged it to be due to the parties of the contract, under the terms thereof, and made the said contract a part of her answer.

Appellant admitted that Hendricks and Boyce were entitled to have the money received by them out of the Sanborn fund, but filed a reply to Popham's pleadings, alleging that Harrell was notoriously insolvent on March 2, 1912, at the time of the execution of the deeds of trust, and that such deeds were executed solely for the purpose of placing the property of the said Harrell beyond the reach of his creditors, and that Popham knew of this purpose at the time; that if plaintiff was mistaken as to this, and that said deeds of trust were valid and subsisting liens on the interest of Harrell in said land, then that said deeds of trust were released in consideration of $750 paid to intervener Popham, and that they were based upon a valuable consideration, and that from and after the time of the payment of said $750 and the receipt of said release Popham had no interest in said lands or the funds to be derived from the sale of the land or judgment, and specially denying that the intervener Popham had any ownership in said funds, and to allege that he procured an order for the same on or about the 9th day of December, 1912, from Harrell to Boyce, directing the said Boyce to pay the money over to the intervener, and that at that time said intervener had full knowledge of said writs of garnishment and had executed the replevin bond, and could not thereby become the owner of said fund.

Plaintiff made a motion to strike out the answer of the defendant William Harrell, on the ground that he had no interest in the subject-matter of the suit, and that such answer was filed for the purpose of injuring and prejudicing the rights of plaintiff herein.

The case was tried before the court without the intervention of a jury, and on the 15th day of December, 1913, judgment was entered denying plaintiff a recovery and decreeing that the intervener Al Popham be entitled to the sum of $2,914.27 of the fund received from Mrs. Sanborn, and adjudging all costs against the plaintiff.

[1] The parties have filed able and exhaustive briefs upon the several points presented for consideration, but appellant has suggested fundamental error which, upon consideration, we think requires that the judgment below be in part reversed and rendered. It appears from the record that appellee Harrell filed a replevin bond containing the following recitals:

"Now, therefore, in order to release from said writs, and each of them, any and all the debts, claims, shares, and effects of any kind, subject to said writs, owing by or in the possession of the said Ellen M. Sanborn, H. G. Hendricks, and Wm. Boyce, and belonging to the said Wm. Harrell at the date of the service of said writs, or owing by the said garnishees to the said defendants, or effects in their possession belonging to the said Wm. Harrell up to the time of filing answer herein, we the undersigned, Wm. Harrell, as principal, and Al. Popham, H. G. Hendricks, and Wm. Boyce, as sureties, acknowledge ourselves bound to pay to the said Amarillo National Bank of Amarillo, Tex., a corporation duly incorporated, the sum of," etc.

This bond is executed by Harrell as principal and by appellees Hendricks, Popham, and Boyce as sureties. The judgment entered decrees that the garnishees shall be discharged, and that appellant take nothing as against Harrell and the sureties on his replevin bond. It will be observed that this replevin bond claims the fund replevied as the property of Wm. Harrell, while the answer filed by Harrell and the garnishees, except Mrs. Sanborn, asserts that the fund, by reason of previous assignment, belongs to Popham and to Hendricks and Boyce. Appellant contends that, under the case of Seinshiemer v. Flanagan, 17 Tex. Civ. App. 427, 44 S. W. 30 (in which the Supreme Court refused a writ of error), Harrell, Hendricks, and Boyce are estopped from claiming that the indebtedness was not due to Harrell, and base this claim upon the above-quoted recital in the replevin bond. In the Seinshiemer Case, supra, Flanagan recovered a judgment in the district court against a firm (of which Seinshiemer was a member), and also against Seinshiemer individually. Thereafter Flanagan sued out a writ of garnishment for service on Wallis. Afterwards Seinshiemer filed a replevin bond in accordance with the statute. In due time Wallis, the garnishee, filed his answer. Judgment was rendered in the garnishment proceeding

against Wallis that Flanagan recover the sum of $50, an amount which the answer of Wallis showed he had owed one Powell for board, but which account had been conveyed by Powell to Seinshiemer. Judgment was also rendered against Seinshiemer and the sureties on the replevin bond. In affirming this judgment, Williams, J., said:

"The fifth assignment of error complains of the judgment on the ground that it was based solely upon the written answer of the garnishee, and that such answer did not make it appear affirmatively that the garnishee was indebted to Seinshiemer, but did make it appear that he was indebted to Milton Powell. The recitals of the judgment authorized the presumption·that the question as to Wallis' indebtedness was submitted to the court orally, and that the evidence which was heard justified the court in finding that the indebtedness was to Seinshiemer. Such a finding·would be at least inconsistent with the answer of the garnishee. It has been held that issues upon the answer of a garnishee can be made orally, by consent, and the recitals in the judgment authorize the conclusion that this was done. But another reason for holding this contention of the plaintiffs in error to be unsound is that Seinshiemer replevied the claim against Wallis, and the money was paid over to him. We do not think he can be heard, in this state of the case, to say that the indebtedness was not to him. While the statute authorizes him to make any defense which the garnishee could have made, this does not, in our opinion, entitle him to take such inconsistent positions before the court. His replevy bond, in effect, asserts that he is entitled to the money due from the garnishee, and his present contention is in direct contradiction of that position. He is, in our opinion, estopped from asserting that the money was owing to Powell."

In the instant case it is shown that on March 2, 1912, Harrell executed a deed of trust to secure the indebtedness mentioned above, due from him to Al Popham, as well as to secure Popham against all loss as surety upon his indebtedness to the Drumm Commission Company. On July 17, 1912, the contract for the sale of the balance due on the Nelson judgment and the Nelson land, was executed. On the following day at the request of Harrell, Al Popham executed a release of the deed of trust in order that the sale to Mrs. Sanborn might be consummated. The writs of garnishment, as stated, were served August 21st and 24th following; and on December 9th, subsequent thereto, the replevin bond, from which we have quoted above, was filed; but before Boyce, who was the attorney of Harrell, would pay to Popham his part of the money, the order hereinbefore set out was obtained. We conclude that the fund coming into the hands of Boyce, who was the attorney and agent of Harrell, is, in effect, a receipt of the money by Harrell.

It is held in Garrity & Huey v. Thompson & Ohmstede, 64 Tex. 597, that a claimant who, by affidavit and bond, asserts an absolute title to the property, and endeavors to recover it in a suit brought under the statute regulating trials of the right of property, will not be heard to claim the property under· a mere lien, because the law will not permit parties to claim and get possession of property on one ground and then retain it upon another and different one, but must stand upon the ground which they first elected, citing Adoue v. Seeligson, 54 Tex. 593; Luckett v. Townsend, 3 Tex. 119, 49 Am. Dec. 723; Watts v. Johnson, 4 Tex. 311. These seem to be the only cases in this state passing upon the question of estoppel by inconsistent positions taken in litigation; but the doctrine is sustained by the weight of authority, as announced by the text-writers, and by the decisions of other jurisdictions. Bigelow on Estoppel (6th Ed.) p. 407, uses this language:

"It has also been held in a suit upon a replevin bond that the obligors will not be permitted to deny that the property was that of the defendant in the attachment, where the bond recited that the propery had been 'attached as' his"

—and, as supporting the text, cites Bursley v. Hamilton, 15 Pick. (Mass.) 40, 25 Am. Dec. 423; Bolling v. Vandiver, 91 Ala. 375, 8 South. 290. The writer states that a contrary doctrine has been held in Decherd v. Blanton, 3 Sneed (Tenn.) 373, and continues:

"However, it is certain that, if the recital is specific (as when it alleges that a writ was issued against the goods, chattels, lands, and tenements of the defendant, and a certain piece of property was levied upon by virtue of the writ), the obligor cannot deny that the property belonged to the defendant in the attachment, unless before forfeiture he surrendered the property, in accordance with the terms of the bond." Gray v. MacLean, 17 Ill. 404; Mitchell v. Ingram, 38 Ala. 395; Dezell v. Odell, 3 Hill (N. Y.) 215, 38 Am. Dec. 628; Dresbach v. Minnis, 45 Cal. 223; Dewey v. Field, 4 Metc. (Mass.) 381, 38 Am. Dec. 376.

In Snouffer et al. v. City of Tipton, 150 Iowa, 73, 129 N. W. 345, Ann. Cas. 1912D, 414, the syllabus correctly states the holding of the court as follows:

"A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith, to the prejudice of the adverse party, and therefore where plaintiffs, in a former action in equity against them and others to cancel assessments, had an opportunity to offer to reconstruct and remedy defects in paving, but elected to defend on the ground that the work was done according to contract, they are estopped to claim that they had no opportunity to reconstruct and remedy the defects, in a suit by them on quantum meruit for a reasonable value of the paving"—citing numerous authorities sustaining the doctrine announced. 16 Cyc. 796, 785, 787; Hoffman v. Fleming, 66 Ohio St. 143, 64 N. E. 65, 66; Scanlon v. Alexander et al., 71 Minn. 351, 74 N. W. 146, 70 Am. St. Rep. 326; Peterson v. Woollen, 48 Kan. 762, 30 Pac. 128, 129, 30 Am. St. Rep. 327; U. S., to the Use of Hine et al., v. Morse, 218 U. S. 493, 31 Sup. Ct. 37, 54 L. Ed. 1123–1130, 21 Ann. Cas. 782; Smith v. Rogers et al., 191 Mo. 334, 90 S. W. 1153; People v. Hammond et al., 109 Cal. 384, 42 Pac. 38; Dalton v. Rust, 22 Tex. 133; volume 2, Ruling Case Law, § 106, p. 891.

We can conceive of no more inconsistent position being taken in court than that assumed by the defendant and garnishees in their pleading, on the one hand, and in the replevin bond by which they obtained possession of the fund, on the other, and in none of

the cases do we find that the rule requiring estoppel to be pleaded was applied.

It appears from the record that the appellant admitted in open court that Hendricks and Boyce were entitled to recover the $1,089.06, adjudged to them, and to that extent, and in so far as it relates to Mrs. Sanborn, the judgment will be affirmed. As to that portion of the fund decreed to Popham, the judgment is reversed, and here rendered for appellant. The costs are adjudged against Popham.

Affirmed in part and reversed and rendered in part.

HENDRICKS, J., disqualified, not participating.

### On Motion for Rehearing.

HALL, J. [2] Appellees, except Mrs. Sanborn, have filed motions for rehearing, insisting that we erred in our original opinion, in that the question of estoppel should not have controlled the disposition of the case, and that, if the fund was not subject to garnishment, the judgment should have been affirmed, notwithstanding the question of estoppel. The effect of an estoppel, whether legal or equitable, is to preclude the parties from contradicting the recital or admission on which the estoppel is founded, and its existence must always be a question of law for the court, and not of fact for the jury. Temple v. Partridge, 42 Me. 56; Jackson v. Waldron, 13 Wend. (N. Y.) 178; Wightman v. Reynolds, 24 Miss. 675; Goodrich v. Bryant, 5 Sneed (Tenn.) 325; Heilner v. Battin, 27 Pa. 517.

Appellees also request additional findings as to whether the fund sought to be reached by the garnishment was, at the time of the service of the writs of garnishment and execution of the replevin bond, subject to garnishment. Separate and apart from the question of estoppel, we think the fund was not subject to garnishment under the terms of the contract existing between the parties at the time the writ was served, but, in our opinion, appellees, by consummating the deal between the time of the service of the writ and the filing of their several answers, created a debt which could be garnished.

Since handing down our original opinion in this case at the last term, our attention has been called to the case of Davis v. McFall, 168 S. W. 453, in which Conner, J., citing Seinshiemer v. Flanagan and other authorities not cited by us, holds that the execution of a replevin bond, as in this case, constitutes an estoppel against the defendant and his bondsmen.

We have carefully reviewed the motions for rehearing filed by appellees, as well as the authorities cited by them, and, while the grounds urged are strongly persuasive, we think the law is established in this state as we have declared it.

The motions for rehearing are therefore overruled.

HENDRICKS, J., disqualified, not participating.