FRANCISCO CAPÓ PAGÁN, Plaintiff and Appellant, *v.* LUCE & COMPANY, S. EN C., Defendant and Appellee.

No. 9739. Argued March 9, 1949.—Decided February 10, 1950.

*Francisco Capó Pagán, pro se. R. V. Pérez Marchand, R. Hernández Matos,* and *Alberto Gerardino,* for appellant. *Sifre, Franceschi & Sifre* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

In 1940 Francisco Capó Pagán sued Luce & Co., S. en C., to revendicate certain co-ownerships in a farm. After a trial on the merits, the district court entered judgment in favor of the defendant and the plaintiff appealed.

The first two errors assigned relate to the weighing of the evidence by the lower court. The theory of the plaintiff is that he owns certain co-ownerships in a farm known as "Molinari" which are recorded in his name in the Registry of Property. However, the documentary evidence introduced by the defendant establishes and the lower court held that in the late 1800's the Sucesión of Pedro Juan Capó Planchard became the owners by inheritance of a farm known as "Destino"; that thereafter in 1888 the said Sucesión purchased an adjoining farm known as "Molinari", with a provision in the deed that: "It being made known that the farm involved herein will become an integral part of the farm 'Destino' now belonging to said heirs, in which form this will be made known in the Registry of Property, when inscribing the present deed"; that since that date the two farms "Destino" and "Molinari" have been treated in various deeds of transfer, the plans attached to them, and in other documents, by all those in the chain of title as merged into a single farm, known as "Destino", although no consolidation of the two farms pursuant to the Mortgage Law was ever effected.

The documents of title introduced in evidence trace the title to "Destino", including "Molinari" as added thereto, to the defendant. The case of the plaintiff is predicated on the theory that these documents of title did not operate to convey title to "Molinari". But no third person was involved. Consequently, as between the plaintiff (and his predecessors in

interest) and the defendant (and its predecessors in interest) "Molinari", as a question of civil law, although not under the Mortgage Law, was consolidated with "Destino" and title thereto passed to the defendant by virtue of all the transactions pursuant to which it was transferred. See *Heirs of Fernández v. Succrs. of Ortiz*, 41 P.R.R. 766; *Blanco v. Hernández et al.*, 18 P.R.R. 686; *Quintana v. Capital of Puerto Rico*, 51 P.R.R. 103; *Pacheco v. Plazuela Sugar Co.*, 56 P.R.R. 473; cf. *Olmedo v. Balbín*, 69 P.R.R. 547.

■■ There is one point argued under the second assignment which has given us some concern. In 1919 the mother of the plaintiff petitioned the district court of Ponce for permission to sell $^2/_8$ of $\frac{1}{4}$ of 4.37% of the expanded "Destino" farm which the plaintiff and his sister, both minors, owned by inheritance at that time. The district court granted this petition, setting a minimum price of $2500 on these interests and ordering the marshal of the district court of Ponce to sell them to the highest bidder at a public sale. The sale took place, the defendant's offer of $2,833.34 was accepted and the deed to the said interests was executed in 1920 before a notary by the said marshal and was also signed by the mother, the plaintiff and his sister.

The land in question is located in Santa Isabel, which at that time was in the judicial district of Guayama rather than in Ponce. *Santos v. District Court*, 45 P.R.R. 639; *Balbás v. Luce & Co.*, 47 P.R.R. 890. The plaintiff therefore contends that the sale by the Ponce marshal of his interest and of his sister's interest, consisting of $^2/_8$ of $\frac{1}{4}$ of 4.37% of "Destino", was void.[1] He relies on cases in which we have held that the marshal of one district may not carry out an order to attach property to secure the effectiveness of a judgment or comply with a writ of execution by levying on and selling real property in another district. In those cases we concluded

---

[1] The sister's present interest, if any, was purchased shortly prior to the filing of this suit by the plaintiff for $50.

that the action of the marshal was void and therefore subject to collateral attack at any time. *Benet* v. *Hernández,* 22 P.R.R. 323; *Maldonado* v. *Preston,* 22 P.R.R. 614; *Solá* v. *Castro et al.,* 32 P.R.R. 740; *Benítez* v. *Benítez,* 34 P.R.R. 216. In the same way, we have held that real property must be located in its judicial district for a district court to have jurisdiction over the foreclosure of a mortgage thereon and for a marshal to have the authority to sell the property pursuant to a judgment of foreclosure. *Blondet* v. *Benítez et al.,* 33 P.R.R. 394.

The conclusions reached in the cases cited in the foregoing paragraph were compelled by the language of our statutes. For example, § 245 of the Code of Civil Procedure provides that where execution "requires the delivery of real or personal property, it must be issued to the marshal of the district *where the property, or some part thereof, is situated. . . . .*". (Italics ours.) Similarly, Article 170 of the Mortgage Regulations and § 75 of the Code of Civil Procedure specifically require foreclosure of a mortgage on real estate in the district where the real estate is located. But this case does not involve an attachment, an execution or a mortgage foreclosure. It is therefore not governed by § 245 or by Article 170 and § 75. On the contrary, it is governed by the specific terms of the following: (1) §§ 80–82 of the Act relating to Special Legal Proceedings, found in §§ 614–16 of the Code of Civil Procedure, as amended by Act No. 70, Laws of Puerto Rico, 1937; (2) § 159 of the Civil Code, 1930 ed.

Section 159 of the Civil Code provides that sales of real property belonging to minors may not be made "without the previous authorization of the district court wherein the property is situated . . .". Notwithstanding the seemingly absolute terms of § 159, a parent with *patria potestas* may confer jurisdiction on a district court wherein the land is not located by filing a petition therein for authority to sell the land. This latter rule is firmly established in this jurisdic-

tion. Our cases have predicated this conclusion on the *general* provisions of §§ 76 and 77 of the Code of Civil Procedure which permit the *parties* to make agreements of submission to jurisdiction. We reached this result in spite of (1) the *specific* provision in § 159 of the Civil Code as against the merely general provisions of §§ 76 and 77 and (2) the doubt that §§ 76 and 77 applied to an *ex parte* proceeding. *Díaz v. González*, 261 U. S. 102; *Ex parte Montalvo, ante*, p. 437, 443; *Martorell et al. v. J. Ochoa & Bros. et al.*, 26 P.R.R. 625; *Agenjo et al. v. Santiago Rosa et al.*, 26 P.R.R. 648; *González et al. v. Benítez et al.*, 27 P.R.R. 364.

As noted above, this proceeding is governed by § 159 of the Civil Code and §§ 80–82 of the Act relating to Special Legal Proceedings. As we have seen, under § 159, as interpreted by our cases, a district court has jurisdiction over a petition to sell land belonging to a minor which is located outside the district. We turn next to the task of determining the meaning of §§ 80–82. The latter supply the procedure for carrying out such sales. They must therefore be read together with § 159.[2] But it is important to remember that in reading §159 and §§ 80–82 together, we must read § 159 not in accordance with its literal terms but as construed by our cases.

 Section 80 provides for the filing of a petition for sale of the property of a minor in "the district court of competent jurisdiction . . .". Sections 81 and 82 provide that the sale shall be authorized and the scope of the judgment shall be fixed by "the judge". In the light of § 159 as construed by our cases, obviously "the judge" may as in this case be a judge of a district other than where the property is located. Indeed, the appellant makes no contention to the contrary. The con-

---

[2] That § 159 and §§ 80–82 must be read together is made even clearer when we note that when § 159 and §§ 80–82 were amended to read in substance on the point before us as they do today, the Legislature did so in the very same statute. Act No. 33, Laws of Puerto Rico, 1911.

troversy is therefore reduced to determining the meaning of the second paragraph of § 82.

The second paragraph of § 82 provides in part that "The public sale . . . shall be carried out in the presence of the marshal *of the district* after the publication of the corresponding edicts in the customary places and in a newspaper with circulation in the district . . .". (Italics ours.)[3] It is important to note that this language is unlike the statutory provisions relating to execution, attachment and mortgage foreclosure. It does not contain a mandate as in those cases that the marshal must be the marshal of the district where the property is located. Moreover, under § 159, as interpreted by us, the district court of Ponce had jurisdiction to order the sale of land located as here in another district. And this is true despite the specific mandate of § 159 of the Civil Code that no such sales may take place "without the previous authorization of the district court wherein the property is situated". We therefore fail to see why we must hold that the Ponce marshal may not comply with the order of the court decreeing the sale, particularly as § 82, which applies to such sales, contrary to § 159, contains no language prohibiting either the court from so ordering or the marshal from carrying out the order.

We recognize the force of the argument that a vendor is apt to receive a better price if real estate is offered for sale where it is located. But the choice lay in the hands of the mother representing the minors. She had a right to submit to the jurisdiction of the Ponce district court and she did so. Indeed, perhaps at that time she thought property in the Guayama area had a higher sales value in Ponce than where it was located. In any event, having requested the Ponce court to act and thereby having conferred jurisdiction on it, the mother—and thereafter the children—could not be heard

---

[3] We recently reaffirmed our view that this language means that the marshall shall execute the deed of sale. *Lókpez* v. *Sotelo, ante,* p. 475..

to complain that the court used its own marshal, which is not prohibited by § 82, to execute the order of sale which the court entered at the request of the mother. The mother accepted the sales price, which was more than the minimum price fixed in the order, and joined the marshal and the minors in executing the deed of sale without raising this highly technical objection. We are unable to see why the children should be able to contend twenty years later that a judicial sale made under those circumstances was wholly void.

It is true that in some of our earlier cases we used sweeping language to the effect that "a marshal has no authority or power to sell property outside of the geographical limits of his own district." *Benítez* v. *Benítez, supra,* p. 221. But that language must be read in its context. In those cases we were considering attachments, writs of execution or sales under foreclosure proceedings. In all of them as we have seen our statutes specifically prohibit such action except by the marshal of the district where the property is located. But as we have also seen under our cases a parent with *patria potestas* seeking authority to sell real estate to minors may voluntarily submit such real estate, located outside its district, to the jurisdiction of a district court, despite the provisions of § 159 of the Civil Code; and nothing in § 82 prohibits such a court from utilizing its own marshal to accomplish such a sale.

We have found no case in this or in any other jurisdiction holding that a sale by a marshal under the circumstances of this case is void. And we are not disposed to establish for the first time a harsh, technical rule of this kind which would serve no practical purpose. See *Menard* v. *Mac Donald,* 115 S. W. 63 (Tex., 1909); *Dabney* v. *Manning,* 17 Am. Dec. 597 (Ohio, 1828); cf. *Fernández & Bros.* v. *Ojeda,* 266 U. S. 144; *Hine* v. *Morse,* 218 U. S. 493.

The third assignment is that the lower court erred in permitting the defendant to amend its answer in order to add

834

two defenses on the last day of the trial, thereby violating the agreement made at the pre-trial conference. We are unable to agree that the lower court abused its discretion in permitting this action. The fourth and fifth errors, relating to fruits and triple damages, become academic in view of the result we have reached as to the first two errors.

The judgment of the district court will be affirmed.

