DAVIS v. McFALL. (No. 7881.)

(Court of Civil Appeals of Texas. Ft. Worth. April 4, 1914. Rehearing Denied May 2, 1914.)

ESTOPPEL (§ 68*)—GROUNDS—POSITION IN JUDICIAL PROCEEDINGS.

Under Rev. St. 1911, art. 279, providing that the defendant may replevy any effects, debts, etc., seized or garnished by giving a bond conditioned for the payment of any judgment rendered against the garnishee, and that where the defendant gives such bond he may make any defense which the defendant in garnishment could make, where defendant replevied a bank deposit which had been garnished, he could not thereafter urge that a third person was the owner of the deposit, and a surety on the replevy bond was likewise estopped to assert ownership to the deposit, though the bond recited that the defendant desired to replevy the deposit for the reason that it "is not" the property of defendant, but belonged to such surety, since the statute authorizes the defendant alone to obtain possession of the property garnished, and the surety could not be permitted indirectly to do so, especially as the language of the recital in the bond was consistent with defendant's own-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ership of the deposit when the writ of garnishment was served.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 165–169; Dec. Dig. § 68.*]

Appeal from District Court, Parker County; F. O. McKinzie, Judge.

Action by R. W. Davis against W. C. McFall, in which J. M. McFall intervened. From a judgment for the intervener, plaintiff appeals. Reversed and rendered.

Lanham & O'Neal, of Weatherford, and Stephens & Miller, of Ft. Worth, for appellant. C. C. Huff, of Dallas, Hood & Shadle, of Weatherford, and Penix & Eberhart, of Mineral Wells, for appellees.

CONNER, C. J. The appellant, R. W. Davis, sued W. C. McFall in the district court upon a promissory note and other indebtedness aggregating at the time of the judgment $6,944, and at the same time caused the issuance of a writ of garnishment and its service upon the First National Bank of Mineral Wells. The writ was served at 5:30 p. m. on the 3d day of February. On or about the 20th day of February thereafter, W. C. McFall as principal and J. M. McFall and C. C. Huff as sureties filed in the district court an approved replevy bond, as provided in article 279 of the Revised Statutes, upon which the Mineral Wells bank paid to W. C. McFall the sum of $3,000 that had theretofore been deposited by him in that bank under circumstances hereinafter stated. Upon the call of the case in the district court, the appellant secured a judgment against W. C. McFall for said indebtedness without contest; the only contest being in the garnishment proceeding.

In the matter of the garnishment, the Mineral Wells bank answered to the effect that on January 23d prior to the service of the writ upon it W. C. McFall had made a deposit in that bank in the usual course of business on open account of $3,000; that this deposit was subject to check and made generally and not as a special deposit for any particular purpose; that thereafter on the 3d day of February, 1913, J. M. McFall notified the bank over the telephone that he held a check from W. C. McFall for $3,000 drawn against the bank, but that the check was not accepted by the bank; that later on the same day the writ of garnishment had been served upon it, and on the following day the said J. M. McFall presented what he claimed to be a check from W. C. McFall on the bank for $3,000 and demanded payment; but that on account of the service of the garnishment writ the bank had refused to pay the same; that thereafter on the 20th day of February, 1913, the defendant W. C. McFall had replevied said debt, and the same was paid to him by said bank by virtue of his replevy bond on which J. M. McFall was a surety, and the bank prayed to have the court deter-

mine its liability and to protect it from paying its said debt twice.

The record fails to show that W. C. McFall answered or entered an appearance in any way. J. M. McFall, however, filed a petition for intervention in which he alleged:

That the $3,000 placed in the Mineral Wells bank by defendant W. C. McFall had been so placed as a trust fund "for the purpose of turning same over to this intervener for the purpose of putting through a deal between this defendant and the defendant W. C. McFall." That "under the agreement between he and his father, W. C. McFall, he was to assume and did assume all indebtedness against said property of his father, and in addition thereto was to procure, and he did procure, on his own responsibility and on his own paper the sum of $7,500 to assist said W. C. McFall financially in clearing up the title to certain lands sold by his said father, W. C. McFall, and to clear up and pay off certain debts of his father, W. C. McFall, and in consideration and return for which, and as a part of said contract and agreement, the said W. C. McFall, joined by his wife, made, executed, and delivered to the said J. M. McFall deeds to certain lands in Palo Pinto, Tarrant, and Erath counties, Tex., on a certain vendor's lien note for $3,400, and did make and execute to him a check of date February 1, 1913, before the service of said writ of garnishment, payable to his order on the First National Bank of Mineral Wells for this $3,000 sought to reached by this writ of garnishment." And that due notice thereof had been given to the bank before the service of the writ.

Appellant answered the plea of intervention by special exception and answer raising the issue of estoppel to be hereinafter noticed, by general denial, and specially to the effect that the deposit made by W. C. McFall in the garnishee bank had been made in due course of business and not as a special deposit, and that thereby merely the relation of debtor and creditor had been created between the bank and W. C. McFall; that the bank had not accepted the order contained in the check prior to the service of the writ of garnishment; and further that at the time of the issuance of the check the defendant W. C. McFall was insolvent and that the check had been issued for the purpose of placing the proceeds thereof beyond the reach of plaintiff as one of his creditors and for the purpose of hindering and delaying the plaintiff in a collection of his debt, and was therefore void as against the plaintiff.

A trial before a jury upon the issues presented in the garnishment proceeding resulted in a verdict and judgment for the intervener, J. M. McFall, which also discharged the garnishee.

While it seems to be substantially undisputed in the evidence that W. C. McFall was insolvent at the time he issued the check in controversy and made the other conveyances specified in the petition of the intervener, the jury, as must be implied from the verdict under the charge of the court, upheld the good faith of these transactions, and thus lends support to the contention in behalf of the intervener that the check under the circum-

stances should be construed as an assignment of the $3,000 that had been deposited by W. C. McFall in the First National Bank of Mineral Wells. This contention is vigorously assailed by appellant, but we have concluded that we need not determine whether, in view of W. C. McFall's undisputed insolvency, the transaction as detailed in the petition of the intervener can be upheld as against a creditor without notice of the conveyance, for upon another ground we think the judgment must be reversed and here rendered for the appellant.

The pleading and record show without substantial dispute that the deposit mentioned by W. C. McFall was the usual one in the ordinary course of banking business, merely creating as between the bank and W. C. McFall the ordinary relation of debtor and creditor. Article 279 of the Revised Statutes provides that after the service of a writ of garnishment it shall be unlawful for the garnishee to pay to the defendant any debt, or to deliver to him any effects; provided, however:

"That the defendant may at any time before judgment replevy any effects, debts, shares, or claims of any kind, seized or garnished by giving a bond with two or more good and sufficient sureties to be approved by the officer who issued the writ of garnishment, payable to the plaintiff in double the amount of the plaintiff's debt, and condition for the payment of any judgment that may be rendered against the said garnishee in such suit, which bond when properly approved shall be filed among the papers in the cause in which the suit is pending; and in all proceedings in garnishment, where the defendant gives bond as herein provided for, such defendant may make any defense which the defendant in garnishment could make in such suit."

It will be seen from this statute that it is the defendant in the suit and no other who is thus authorized to replevy effects or debts which are in the hands of the garnishee at the time of the service of the writ, and by the execution of the bond and replevy the defendant in legal effect affirms that the property replevied belongs to him and not to another. Thereafter the courts will not hear him in a contention that some other person and not himself owned the property delivered to him by virtue of the replevy bond. See Seinsheimer v. Flanagan, 17 Tex. Civ. App. 427, 44 S. W. 30, in which writ of error was refused by our Supreme Court. In that case Flanagan secured the service of a writ of garnishment upon one Wallis, who answered that he was indebted to one Milton Powell in the sum of $50 for board, but that he had been notified by Seinsheimer that the account had been transferred to him. Seinsheimer later replevied the $50 which was paid to him by Wallis, and it was held that he was estopped from defending in the garnishment proceeding on the ground that the debt was due to Powell instead of to him. In a similar case it was said by the Supreme Court of Nebraska (see Allyn v. Cole, 3 Neb. [Unof.] 235, 91 N. W. 505):

"By giving the bond, the party in whose possession the property was found elected to treat the property as that of the defendant in the suit. Giving the bond would not prevent her from attacking the attachment itself. * * * But it necessarily operated to prevent any assertion of ownership on her part. Having covenanted that the property should be forthcoming, to answer the judgment of the court, she could, consistently with her agreement, proceed to obtain a judgment for the defendants. To claim that the property which she had agreed to produce for the satisfaction of the judgment was hers, and therefore not subject thereto, would be entirely inconsistent with her undertaking and in contravention thereof. Hence it has been held repeatedly, under statutes such as ours, that the person from whose possession property is taken by attachment may give a redelivery bond, and recognize the property as that of the attachment debtor, confining himself to such defense as the latter may make; or may claim it as his own by replevin or other appropriate proceeding. If he elects the former course, he cannot claim the property as his"—citing numerous cases including decisions from Kansas, Connecticut, California, and New York.

We think it may be safely affirmed that such is the general rule, and hence that W. C. McFall, after the replevy, would not have been heard to say that the property secured by the replevy bond was the property of some person other than himself, and in this respect his sureties, including J. M. McFall, are in no better attitude; for, by joining in the execution of the bond, they thereby made themselves real parties to the suit. See Tinsley v. Ardrey, 26 Tex. Civ. App. 561, 64 S. W. 803.

Intervener, however, insists with apparent force that in the case before us he ought not to be held estopped for the reason that notice of his claim was presented in the face of the replevy bond. The replevy bond, after reciting the issuance and service of the writ of garnishment, further reads:

"Whereas, W. C. McFall, defendant, desires to replevy any effects, debts, shares, or claims of any kind seized or garnished under and by virtue of the said writ of garnishment in the hands of said garnishee above mentioned for the reason that same is not the property of the said W. C. McFall, but belongs to one J. M. McFall: Now, therefore, in order to release from the lien of the said writ any and all effects, claims, shares, and debts, if any, owing by or in the possession of the First National Bank of Mineral Wells, Texas, as garnishee, and claimed by the plaintiff herein, that belonged to the said W. C. McFall at the date of the service of said writ and which may be owing by said First National Bank of Mineral Wells, Texas, to W. C. McFall, or his assignee, or which shall come into the possession of the First National Bank of Mineral Wells, Texas, up to the time said garnishee files its answer in said cause, we the undersigned W. C. McFall, as principal, and the other signers hereto as sureties, acknowledge ourselves bound to pay to the said R. W. Davis the sum of thirteen thousand dollars conditioned for the payment of any judgment that may be rendered against said First National Bank of Mineral Wells, Texas, as garnishee in said cause aforesaid."

We think the case one in which actions speak louder than words. As before observed, J. M. McFall had no right under the statute to obtain possession, as he in fact did, of the $3,000 in the Mineral Wells bank by

a replevy. The defendant W. C. McFall alone, under the statute, had such right, and this was undoubtedly recognized by J. M. McFall in the execution of the bond in question. Will the courts uphold him in indirectly doing that which cannot be directly permitted? We think not. The law abhors evasions and subterfuges, and the law will not uphold him in maintaining the benefit secured thereby. Nor do we think the imputed notice necessarily tantamount to a declaration that the $3.000 in the Mineral Wells bank was the property of J. M. McFall· at the time of the service of the writ. The bond merely recites that W. C. McFall desired to replevy "for the reason that same is not the property of the said W. C. McFall, but belongs to one J. M. McFall," using the terms in the present sense, and, as stated, they are not necessarily to be construed otherwise. It is easily conceivable that the indebtedness of the bank to W. C. McFall for the $3,000 in fact continued to the time of the service of the writ of garnishment upon it, and that thereafter an assignment of the fund had been made by W. C. McFall to J. M. McFall for purposes of their own, and the replevy thereafter made in order to render such assignment immediately effective so far as J. M. McFall was interested, and we think such construction should be given to the bond, rather than to impute a trifling with the court, upon which ground alone, as we understand, the defendant should be held to be estopped.

On the whole, we conclude that the judgment should be reversed and here rendered for appellant against J. M. McFall and C. C. Huff, sureties on the replevy bond, for the sum of $3,000 so secured by J. M. McFall, together with all costs of the garnishment proceeding below and the costs of appeal; the judgment in all other respects being undisturbed.

DUNKLIN, J., disqualified and not sitting.