## OSCEOLA MERCANTILE CO. v. NABORS et al. (No. 6364.)

(Court of Civil Appeals of Texas. San Antonio. April 2, 1920. On Motion for Rehearing, April 28, 1920.)

1. **Banks and banking** ⊜134(1)—**Bank may apply deposits to obligation of insolvent debtor.**

A bank has a right to apply money in its hands belonging to an insolvent debtor to the obligations due by him to the bank.

2. **Garnishment** ⊜121½, New, vol. 10A, Key-No. Series—**Debtors may make defense garnishee could have made if not waived.**

In garnishment the debtor under the statute may make such defense as the garnishee could have made, but he cannot defend on the ground that the garnishee might have exercised rights which it waived.

3. **Garnishment** ⊜109—**Garnishee cannot apply funds to debt due from defendant after service of writ and replevin.**

Where a debtor borrowed money for farming purposes from a bank which kept such money on deposit subject to check and a creditor garnished the bank, the debtor replevying

the funds in the bank on a replevy bond payable to the creditor, the bank, not having applied the funds garnished to its debt from the debtor, cannot do so after the service of garnishment and the replevy of the property; it being fully protected by the replevy bond.

**4. Garnishment ⬥183—Effect of replevy bond as to garnishee stated.**

After the replevy of a fund garnished, the garnishee is but a nominal party, and no judgment can be rendered against him except as to the amount due, and that it was replevied, and no execution can be awarded against him.

Appeal from District Court, Hill County; R. T. Burns, Judge.

Action by the Osceola Mercantile Company against H. C. Nabors and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Dupree & Crenshaw, of Hillsboro, for appellant.

J. J. Averitte and Wear & Frazier, all of Hillsboro, for appellees.

COBBS, J. This case is a garnishment proceeding by appellant against appellees under the statute seeking to subject a certain fund deposited and in the possession of the First State Bank of Hillsboro, as garnishee, alleged to belong to H. C. Nabors, debtor in the original action and against A. M. and J. T. Frazier, sureties on the replevin bond filed by said Nabors. The material part of the garnishee's answer to the writ, necessary to notice, is:

"That in the contract and agreement in regard to the borrowing of said money, and as part of the contract, and as a condition on which said money was loaned to said Nabors, he said Nabors agreed with and promised said garnishee that he so needed said money for the purposes aforesaid, and that he would use said money and check out the same out of this garnishee bank only and as he needed same for such necessary expenses, and for no other purpose, and also represented to said garnishee that he owed nobody anything, and that he owed no other debt, and, by virtue of the aforesaid representations and for the above-mentioned purposes, this garnishee, relying upon same, was induced to make said loan to said Nabors. That this garnishee had no knowledge whatever nor notice of any debts owing by said Nabors, and no notice or knowledge that said Nabors owed the plaintiff any debt, and garnishee now says that if it be true that said Nabors is indebted to plaintiff as alleged by plaintiff, then the representation aforesaid was in reality a mistake, and was not true in fact, and this garnishee says that by virtue of said facts above set forth this garnishee claims the right to rescind said contract of loan to said Nabors. That when the writ of garnishment was served herein upon this garnishee said Nabors had of the money so loaned the sum of $319.50, left on deposit with this garnishee bank, and said sum has so been on deposit ever since and is now so on deposit. That said amount of said money so borrowed has

never been checked out of said bank, and never was identical money belonging to said Nabors, but was only part of the money so aforesaid contracted for by said Nabors. That if this money can be held as against this garnishee and said Nabors, it would render said Nabors unable to fulfill his contract with garnishee whereby he agreed to cultivate said 120 acres of estate so mortgaged to garnishee, and would injure garnishee's mortgage security for its said debt against Nabors, and interfere with the performance of said Nabors' contract with garnishee. Wherefore garnishee herein prays that it have judgment canceling said contract whereby said money was so loaned to said Nabors by garnishee, and that said sum of money, to wit, $319.50, be appropriated pro tanto, and credited on said note of this garnishee against said Nabors without detriment to the remaining balance due by said Nabors to garnishee and garnishee's lien on said personal property, and that, if this relief is not available in law, said sum so on deposit be adjudged not subject to garnishment herein for the other reasons hereinabove set forth, and prays that said Nabors be cited to appear and answer, if he sees fit, this answer of garnishee, and to defend against the claims of plaintiff herein; and garnishee asks that it be protected by the judgment of the court herein, asks for costs of court, attorney's fees herein of $25, etc., for general and equitable relief," etc.

The case was tried by the court without a jury, resulting in a judgment against appellant and taxing against him $25 as attorney's fees for filing garnishee's answer. The appellant appealed from the judgment to this court.

Upon motion, the court filed its findings of fact and conclusions of law, which we adopt as containing all the facts necessary to consider in the decision of this case, as follows:

"H. C. Nabors, defendant in cause No. 3592, styled Osceola Mercantile Company v. First State Bank, of Hillsboro, Garnishee, filed in the county court of Hill county, Tex., on January 16, 1917, was a tenant farmer, and for the year 1917 had rented land from Colonial Trust Company. He was at such time and at the time of the trial of this cause and the rendition of judgment herein insolvent. He, outside of himself and his family, had his teams and a few meager tools; had no other means with which to enable him to buy food and provisions for his family, feed for his teams, or to enable him to make a crop on said land for said year, and to gather said crop. On the 10th of January, 1917, he applied to T. J. Files, president of First State Bank, the garnishee, for a loan of money to be used by him in purchasing food and provisions for his family, feed for his team, and to enable him to make and gather the crop on said farm so theretofore rented by him. It was then and there agreed between the said H. C. Nabors and the said Files, acting for said First State Bank, that a loan of $400 should be, and the same accordingly was, made by said bank to the said Nabors, and such sum was deposited to his credit. It was then and there agreed, however, between said Nabors and the said Files, acting

for said bank, that the money would be used and checked out solely for the purposes mentioned, and for none other; that is to say, for the purpose of buying food and provisions for his family, feed for his teams, and to enable the said Nabors to make and gather said crop.

"In order to better secure said loan the said First State Bank took a mortgage on the crop so to be planted, raised, and gathered by said Nabors on said rented premises, the mortgage being as follows:

" 'The State of Texas, County of Hill.

" 'Know all men by these presents: Whereas, the undersigned has or have this day executed to First State Bank, of Hillsboro, Texas, a certain note for the sum of four hundred forty and no/100 dollars, payable the 15 day of Oct. A. D. 1917, at Hillsboro, Texas, with 10 per cent. interest per annum from maturity until paid; and being desirous of securing the prompt payment of same at maturity besides any and all other sums of money that the undersigned may have heretofore or may during the years of 1917, become due to the said First State Bank by note or notes, or upon open account, as principal, surety, or indorser, for more particular description of which reference may be made to such other note or notes as the undersigned may execute to said bank during the said time, and as shown by its books and I or we agree and bind myself or ourselves to pay 10 per cent. per annum interest on said account or accounts from the date thereof, besides 10 per cent. attorney's fees for collecting said note or notes and account or accounts, if collected by an attorney or suit, also with such other interest as said notes shall provide; said notes and accounts due and payable at the office of First State Bank, Hillsboro, Texas.

" 'Therefore, in consideration of the premises, the undersigned has or have bargained, sold and transferred, and by these presents do bargain, sell and transfer unto the said First State Bank, of Hillsboro, successors and assigns, all and singular, the following described property; which is hereby represented and warranted to be free from all incumbrance, except as herein stated, to wit: 1 brown mare about 4 yrs. old, about 15½ hands high, 2 bay mare mules about 5 yrs. old, about 15½ hands high, 1 blue horse mule about 6 yrs. old, about 16 hands high, 1 3-in. Moline wagon in use about 1½ years, also about 120 acres of cotton to be planted, raised, and gathered on G. L. White's farm about 7 miles N. W. from Milford, Texas, Route. Above stock and wagon are on same farm. Which I or we obligate and bind myself or ourselves to plant, cultivate and gather, or have planted, cultivated and gathered, and I or we agree to deliver same as gathered to the said First State Bank, Hillsboro, on or before Oct. 15, 1917, same to be raised during the year 1917.

" 'This sale and mortgage to be null and void, however, upon the full and complete payment of all indebtedness, but if the same, together with all accrued interest, be not fully paid when due, then this mortgage may be foreclosed by suit in any court in Hill county having jurisdiction of the amount, or the said First State Bank, of Hillsboro, or their agents or assigns, shall proceed to sell the same, either before or after taking possession thereof,

221 S.W.—63

at public or private sale, for cash or on time, as it may deem best. * * * ' "

We have copied only that portion of the mortgage material to be considered.

The remaining portion of the court's findings continue as follows:

"The court further finds that it was necessary for the money so borrowed from the said First State Bank of Hillsboro to be used by the said Nabors for the purposes for which it was borrowed in order to enable him to plant, cultivate, and gather said crop, or, in other words, to develop the security represented in said mortgage and to be represented by said crop.

"The court further finds that at the time the defendant Nabors obtained said loan and had the same placed to his credit at the First State Bank he was also indebted to the plaintiff, Osceola Mercantile Company, in the sum of $239, besides interest and costs, which indebtedness was unsecured; that on January 16th the Osceola Mercantile Company filed suit against the said Nabors in the county court of Hill county on said indebtedness, and also had issued and served on R. F. Siddons, cashier of the First State Bank, of Hillsboro, Tex., a writ of garnishment; that at the time said R. F. Siddons was so served with said writ of garnishment the said H. C. Nabors then and there had on deposit with said First State Bank out of the moneys theretofore borrowed by him of the First State Bank on the 10th day of January, the sum of, to wit, $319.50.

"The court further finds as a fact that on the 12th day of June, 1917, the Osceola Mercantile Company obtained judgment in the county court of Hill county against the said H. C. Nabors for the sum of $332.40, with interest at the rate of 10 per cent. from date.

"The court further finds that said H. C. Nabors was the head of a family; that he used the money that he had obtained from the First State Bank for no other purpose than to buy food and provisions for his family, feed for his team, the seed with which to plant his crop and to make and gather the crop upon which the First State Bank held a mortgage to secure said money.

"The court further finds as a fact that after the crop was planted, cultivated, matured, and gathered on the rented premises in question by the said H. C. Nabors the said crop, together with the teams and property theretofore mortgaged to said First State Bank to secure said $400 loan were sold, and that the entire proceeds resulting from said sale was not more than sufficient to barely repay said First State Bank for the loan which it had made to the said Nabors, and to secure which it had taken the mortgage hereinabove mentioned.

"The court further finds as a fact that if the $319.50 of the fund so theretofore borrowed by the said H. C. Nabors of the First State Bank and in the possession of said bank at the time R. F. Siddons, its cashier, was served with the writ of garnishment in question were, in fact, subject to said writ of garnishment, or if the same had not been devoted to the uses and purposes for which it was borrowed by means of the special agreement between said Nabors and the said bank, the said Nabors

would have been unable to have planted, cultivated, gathered, and marketed said crop, and that the security of said bank would have failed and been nonavailing, and that said bank would have suffered injury and damage by virtue thereof.

### "Conclusions of Law.

"The court finds as a matter of law that under the facts and circumstances above detailed the said $319.50 remaining in the hands of the bank at the time said R. F. Siddons was served with a writ of garnishment was not subject to said writ; that the plaintiff is not entitled to a judgment against said bank, but that it should go hence without day."

On the 27th day of February, 1917, H. C. Nabors filed a replevy bond, signed by him as principal, with A. M. Frazier and James T. Frazier as sureties. The bond on its face is "for the payment of any judgment that may be rendered against the First State Bank of Hillsboro." At the date of the service of the garnishment it is undisputed that the debtor, H. C. Nabors, had on hand in the bank, to his credit and subject to his checks, the sum of $319.50. After the service of the writ, the debtor, H. C. Nabors, replevied that fund, and became entitled to its possession.

Appellant's first proposition, in effect, is that the replevy bond, filed by the debtor, restores the property to him, and, the fund thus seized by the writ and paid over to the debtor by the garnishee, he is thereby estopped to claim that the indebtedness was not owing to him.

[1-4] Under the provisions of the garnishment statute, article 279, Vernon's Sayles' Mr. Justice Connor, in Davis v. McFall, 168 S. W. 453, said, substantially, in construing that article, that the replevy bond filed by the debtor had the legal effect to affirm that the property belonged to him. Seinsheimer v. Flanagan, 17 Tex. Civ. App. 427, 44 S. W. 30. The money secured was left in the bank to the credit of the debtor, H. C. Nabors, to be checked out for the certain stated farming purposes. The bank did not reserve the right to see to the application of the funds. As said in Moore & Bridgeman v. U. S. Fidelity & Guaranty Co., 52 Tex. Civ. App. 286, 113 S. W. 948, a garnishee holds property as a receiver, and must carry out its contract with the debtor, whatever it was; but that does not prevent the debtor from taking the money from the garnishee by replevying it, as it is a statutory right. Appellee insists upon its right to apply the money in the bank to the note and indebtedness represented thereby, though not due, because of the debtor's insolvency and under the nature of the transaction between them. In the answer above quoted the garnishee further prayed for cancellation of the contract, and that the $319.50 be appropriated pro tanto, and credited on said note of the garnishee against Nabors, the debtor. There can be no doubt of the right of a bank to apply the money on hand belonging to an insolvent debtor to the obligations due by him to the bank (Neely v. Grayson Co. Nat. Bank, 25 Tex. Civ. App. 513, 61 S. W. 559; Rosenberg et al. v. First Nat. Bank of Texarkana, 27 S. W. 897; Hall v. Nunn Electric Co., 183 S. W. 15; Owens v. Am. Nat. Bank, 36 Tex. Civ. App. 490, 81 S. W. 989); but no attempt was made to do this prior to the service of the garnishment. There can be no doubt that the bank owed the money to the defendant, and that if it had any right at all it consisted in the right to apply the fund to its debt upon breach by defendant of his agreement to use it for certain purposes or perhaps because of insolvency of which it knew when it made the loan. It did not exercise such right, but permitted the debtor to draw out the money after giving the replevy bond, and presumably it was used for the very purposes called for in the contract. The bank has been paid by the proceeds from the property on which it had the mortgage. The debtor, under the statute, can make such defense as the garnishee could have made, but we fail to see how he can defend on the ground that the bank might have exercised rights which it waived. Knowing all these facts and taking additional security upon other specific property, no attempt was made to create a lien on this money. When that money was taken from the bank by H. C. Nabors on his replevy bond, made payable to appellant, it is protected by that bond, and has no right now or power to offset the note with any part of that fund. The garnishee after the replevy of the fund is but a nominal party, and no judgment can be rendered against him except to be due and replevied, and no execution can be awarded against him. Plowman v. Easton, 15 Tex. Civ. App. 304, 39 S. W. 171. Upon approval of the replevy bond, it takes the place of the debt garnisheed. Tinsley v. Ardrey, 26 Tex. Civ. App. 561, 64 S. W. 803. Where a replevy bond is given, there can be no judgment rendered against the garnishee. Modern Dairy & Creamery Co. v. Blanke & Hauk Supply Co., 116 S. W. 154.

We sustain the assignments, and reverse and hereby render the case so that appellant do have and recover judgment against H. C. Nabors, appellee, principal, and against A. M. Frazier, and James T. Frazier, sureties in the replevy bond filed in this case, for the sum of $239, principal amount shown to be replevied herein and due from the First State Bank of Hillsboro, garnishee. It is further ordered that appellant recover all costs of court against H. C. Nabors, A. M. Frazier, and James T. Frazier.

Reversed and rendered.

### On Motion for Rehearing.

In this case appellant files a motion to correct the judgment rendered herein.

The original suit was for $239 besides interest, costs, and attorney's fees, and judgment was obtained for the sum of $332.40, and the garnishment was duly issued and served upon the garnishee, who answered at time of service thereof that the sum of $319.50 was on hand, and in possession of garnishee. As the obligation of the bond was to replevy any effects, debts, shares, or claims of any kind seized or garnisheed under and by virtue of said writ of garnishment and to "pay any judgment that may be rendered against the said the First State Bank of Hillsboro, Texas, as garnishee," the judgment heretofore rendered herein for $239 is so reformed and corrected as to recover the sum of $319.50, instead of $239, against H. C. Nabors, appellee, principal, and against A. M. Frazier and James T. Frazier, sureties aforesaid, together with all costs.